UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CARL W. MOTT,

               Petitioner,

v.

RANDY REWERTS,

               Respondent.

_____/

Case No. 1:22-cv-876

Honorable Paul L. Maloney

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Carl W. Mott is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On April 12, 2017, following a two-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a.[1] On May 15, 2017, the court sentenced Petitioner as a fourth habitual offender to a prison term of 10 to 30 years.

On September 21, 2022, Petitioner filed his habeas corpus petition raising eight grounds for relief, as follows:

_____

[1] Petitioner was also convicted of larceny under $200.00, but he completed his 93-day sentence for that offense long ago. The habeas corpus statute requires that a § 2254 habeas petition be filed when a person is "in custody" for that conviction "in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. §§ 2241(c)(3) and 2254(a). Ordinarily, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). Because Petitioner is not "in custody" for the larceny offense, that conviction is not at issue in this proceeding.

I.      Petitioner was denied his right to confrontation due to an interpreter unable to properly translate.

II.     Appellate counsel was ineffective for failing to investigate and bring up issues that had merit.

III.    Prosecutorial misconduct and errors shifted the burden of proof onto Petitioner violating his right to a fair and impartial trial.

IV.     The prosecution failed to present sufficient evidence to prove guilt beyond a reasonable doubt that defendant was guilty of 1st degree home invasion.

V.      Trial court errors denied defendant a fair trial.

VI.     Petitioner was denied his constitutional right to effective assistance of counsel and a fair trial.

VII.    Petitioner's procedural default rights were violated where counsel was ineffective in failing to investigate and argue inaccuracies in habitual charge and improper scoring of PRV 1, PRV 2, PRV 5, and OV 3 and OV 9.

VIII.   Where the trial court erred in refusing to excuse a juror for cause, who was a "close acquaintance" of the complaining witness, and required use of a defense peremptory challenge to remove that juror, defendant's conviction should be reversed and remanded for a new trial.

(*See* Pet., ECF No. 1, PageID.3–4.) Respondent asserts that Petitioner's grounds for relief are

meritless.[2] (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed

to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for

---

[2] Respondent also contends that several of Petitioner's grounds for relief are partially unexhausted and procedurally defaulted. (ECF No. 8, PageID.321–327.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

writ of habeas corpus. The Court will also deny Petitioner's motion to compel a more definite statement (ECF No. 14), his motion for an evidentiary hearing (ECF No. 15), and his motion for discovery (ECF No. 23).

## Discussion

### I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> [Petitioner's] convictions arise from his actions at Skibbe Farms on the evening of July 26, 2016. On that date, [Petitioner] stole a picnic table from the property, which an eyewitness saw [Petitioner] loading into the back of his maroon truck. Notably, the evidence also indicated that [Petitioner] entered a residential dwelling where farm employees were living. No one actually saw [Petitioner] inside the building; however, after hearing the screen door slam, witnesses saw [Petitioner] on the outside steps. [Petitioner] hunched down and then climbed inside the truck. The farm manager and an employee tried to prevent [Petitioner] from leaving the property, but [Petitioner] fled in his truck with the picnic table. Inside the building, one of the residents found that all of the drawers and cabinets in the kitchen were open. Nothing was missing from inside the house, but a bag of returnable cans was missing from outside the house.

*People v. Mott*, No. 338923, 2018 WL 3551582, at *1 (Mich. Ct. App. Jul. 24, 2018).

The trial court held Petitioner's preliminary examination on September 15, 2016, at which two employees of Skibbe Farms testified. (ECF No. 9-2.) Prior to taking testimony, the prosecution introduced Raymond (Josh) Ugalde as the Spanish interpreter for the two witnesses. (*Id.*, PageID.496.) Mr. Ugalde swore to "truly, accurately],] and impartially interpret[]." (*Id.*, PageID.497.)

Jury selection for Petitioner's trial began on April 11, 2017. (Trial Tr. I, ECF No. 9-3.) Prior to jury selection, Petitioner's counsel raised a concern about the interpreter. (*Id.*, PageID.554.) Specifically, counsel mentioned his concern that the interpreter had engaged in summarizing and editorializing during the preliminary examination. (*Id.*, PageID.555.) The trial

judge mentioned that Mr. Ugalde may not be "completely certified;" i.e., he was qualified to handle non-trial hearings, but had not received his certification for trials. (*Id.*) After jury selection, but prior to the start of testimony, the court questioned Mr. Ugalde about his qualifications. (*Id.*, PageID.673–75.) The court confirmed that Mr. Ugalde was a "qualified interpreter," but that he was not yet fully certified under the relevant court rules. (*Id.*, PageID.673.) The court did mention that there had been some paraphrasing during the preliminary examination and noted that, during trial, there should be "a word-for-word interpretation." (*Id.*, PageID.677.) Mr. Ugalde confirmed his understanding of what was required. (*Id.*, PageID.678–79.) Petitioner's counsel then questioned Mr. Ugalde regarding his qualifications. (*Id.*, PageID.683–85.) Ultimately, Mr. Ugalde confirmed that he would "just . . . repeat what [the witnesses] said" and not paraphrase. (*Id.*, PageID.688.)

The jury heard testimony from four witnesses, three employees of Skibbe Farms and a detective with the Benton Township Police Department, over the course of two days. (Trial Tr. I & II, ECF Nos. 9-3 and 9-4.) On April 12, 2017, after only a little over an hour of deliberation, the jury reached a guilty verdict. (Trial Tr. II, ECF No. 9-4, PageID.942.)

Petitioner appeared before the trial court for sentencing on May 5, 2017. (ECF No. 9-5.) During sentencing, Petitioner's counsel objected to the scoring of Offense Variable (OV) 9, regarding the number of victims placed in danger of injury. (*Id.*, PageID.953.) The court noted counsel's objection for the record. (*Id.*, PageID.954.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the following claims for relief: (1) there was insufficient evidence to support his conviction for first-degree home invasion; and (2) the trial court erred by denying Petitioner's request to strike a juror for cause because the juror in question was an

acquaintance of Skibbe Farms' manager. *People v. Mott*, No. 338923, 2018 WL 3351582, at *1-3 (Mich. Ct. App. July 24, 2018). Petitioner also filed a Standard 4 brief, arguing that the trial court "erred in allowing an interpreter to translate for the prosecution witnesses at the preliminary examination and at trial without the proper certification, qualification, or *voir dire*." *Id.* at *3.[3] On July 24, 2018, the court of appeals affirmed Petitioner's convictions and sentences. *Id.* at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on February 4, 2019. *See People v. Mott*, 922 N.W.2d 362 (Mich. 2019).

On August 27, 2020, Petitioner filed his first habeas petition in this Court. *See* Pet., *Mott v. Rewerts*, No. 1:20-cv-835 (W.D. Mich.) (ECF No. 1). The Court initially directed Petitioner to show cause why his petition "should not be dismissed as untimely." *See Mott v. Rewerts*, No. 1:20-cv-835, 2020 WL 5494495, at *1 (W.D. Mich. Sept. 11, 2020). The Court also gave Petitioner an opportunity to demonstrate, if the limitations period were extended, "that this case should be stayed and held in abeyance pending exhaustion of several claims in the state courts." *Id.* In response, Petitioner indicated that he had filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500 on May 5, 2020. *See Mott v. Rewerts*, No. 1:20-cv-835, 2020 WL 6054522, at *1 (W.D. Mich. Oct. 14, 2020). The Court, therefore, dismissed Petitioner's first habeas petition without prejudice for failure to exhaust his state court remedies. *Id.*

The trial court denied Petitioner's motion for relief from judgment in an order entered on November 2, 2020. (ECF No. 9-7.) The court of appeals and supreme court denied Petitioner's

---

[3] The court of appeals also considered a *pro per* argument that trial counsel was ineffective for not challenging the interpreter even though it was not contained in the statement of questions presented. *Mott*, 2018 WL 3551582, at *4 n.2. The court of appeals rejected that argument, noting that "any objection to the interpreter's qualifications would have been futile[,] and [Petitioner] has not shown that counsel's failure to object affected the outcome of the proceedings." *Id.*

applications for leave to appeal on June 16, 2021, and May 3, 2022, respectively (ECF Nos. 9-10, PageID.1155; 9-11, PageID.1687). This § 2254 petition followed.

## II.     Pending Motions

### A.     Motion to Compel a More Definite Statement

Petitioner has filed a motion asking the Court to compel Respondent to provide a more definite statement "in the form of their Return" to Petitioner's habeas petition. (ECF No. 14, PageID.1801.) Petitioner contends that Respondent's response is "very lengthy [and] cumbersome," and that Respondent "advanced what [P]etitioner can only describe as a shotgun defense to the petition that has left this pro se petitioner guessing as to what defense they are, in fact, relying on." (*Id.*) Petitioner suggests that he cannot "reasonably prepare" a reply and "possesses only the merest of hopes that he can research, prepare[,] and file his [reply] in the time limits imposed." (*Id.*, PageID.1802.)

Upon review of Respondent's response (ECF No. 8), the Court concludes that it adequately addresses each ground for relief raised by Petitioner in his § 2254 petition. Moreover, the Court notes that Petitioner filed his reply (ECF No. 20) to Respondent's response on May 10, 2023, only seven days after the Court received his motion for a more definite statement. Thus, Respondent's response is not "so vague or ambiguous" that Petitioner could not reasonably prepare a reply. *See* Fed. R. Civ. P. 12(e). Petitioner's motion to compel a more definite statement (ECF No. 14) will, therefore, be denied.

### B.     Motion for an Evidentiary Hearing

Petitioner has also filed a motion for an evidentiary hearing. (ECF No. 15.) Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new evidence at an evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2)

6

is present. *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). The Sixth Circuit Court of

Appeals described the requirements of the statute as follows:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act (AEDPA)] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner seeks an evidentiary hearing so that the Court can "make a fully informed decision as to his confrontation, appellate counsel, and trial counsel claims." (ECF No. 15, PageID.1805.) Petitioner contends that he tried to fully develop the facts regarding these claims during state court proceedings, but that he was prevented from doing so by the state courts. (*Id.*, PageID.1806.) Petitioner, however, does not rely on any new rule of constitutional law, nor do his claims rely on factual predicates that could not have been discovered through the exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, the Court will deny Plaintiff's motion (ECF No. 15) seeking such a hearing.

### C.    Motion for Discovery

Petitioner has also filed a motion for discovery. (ECF No. 23.) Petitioner contends that if the Court grants his motion for an evidentiary hearing, he will "need discovery and an attorney according to Rule 6(b) to properly adjudicate his claimed issues." (*Id.*, PageID.1843.) Petitioner appears to seek the following items: (1) crime scene photographs; (2) an unredacted version of Petitioner's interview by police; and (3) audio transcriptions of interpretations. (*Id.*, PageID.1844.) Petitioner has also attached sets of interrogatories that he seeks to serve upon the prosecutor, his trial and appellate attorneys, and the interpreter. (ECF No. 23-1.)

To the extent Petitioner requests counsel, indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. Rule 8(c), Rules Governing Section 2254 Cases. As discussed *supra*, the Court has determined that an evidentiary hearing is not necessary. Moreover, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position.

Moreover, with respect to Petitioner's discovery requests, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). The habeas rules permit a petitioner to conduct discovery, but only on a showing of good cause. Rule 6, Rules Governing § 2254 Cases. "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy*, 520 U.S. at 908–09). Petitioner, however, fails to

show how the requested discovery would support his claims for relief. Accordingly, he is not

entitled to discovery under Rule 6, and his motion for discovery (ECF No. 23) will be denied.

## III.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions

are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685,

693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated

pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based upon an
> unreasonable determination of the facts in light of the evidence presented in the
> state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of

the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal

quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard

is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation

marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.

28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000);

*Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

law" does not include decisions of the Supreme Court announced after the last adjudication of the

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.   Ground I—Confrontation Clause and the Interpreter

As his first ground for relief, Petitioner alleges that his Confrontation Clause rights were violated because the interpreter was "unable to properly translate." (Pet., ECF No. 1, PageID.5.) Petitioner contends that Mr. Ugalde was allowed to "summarize, editorialize, and paraphrase over 100 times during trial." (*Id.*) Petitioner also suggests that Mr. Ugalde was talking with the witnesses outside of the courtroom during a break. (*Id.*) According to Petitioner, Mr. Ugalde's

inability to "properly translate in a word for word manner" prevented Petitioner from cross-examining the two Spanish-speaking witnesses. (*Id.*)[4]

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

Petitioner first raised his concerns regarding the interpreter in his Standard 4 brief on direct appeal, arguing that the "trial court erred in allowing an interpreter to translate for the prosecution witness at the preliminary examination and at trial without the proper certification, qualification, or voir dire." *Mott*, 2018 WL 3551582, at *3. The court of appeals rejected Petitioner's argument, noting that Petitioner "ha[d] not pointed to any translation errors, [had] not shown that a certified interpreter was reasonably available, and the interpreter was, in fact, qualified" under the Michigan Court Rules. *Id.* at *4.

Petitioner, with the assistance of new counsel, provided additional detail regarding his challenge to the interpreter when he filed his application for leave to appeal to the Michigan Supreme Court. (Appl. for Leave to Appeal, ECF No. 9-11, PageID.1616–1623.) Petitioner raised the more detailed claims regarding the interpreter again in his motion for relief from judgment pursuant to Rule 6.500. (Pet'r's Mot. for Relief from J., ECF No. 9-6, PageID.984–995.)

---

[4] Petitioner also faults trial counsel for "failing to continue his objection as to these errors" and for not objecting to Mr. Ugalde not being certified. (Pet., ECF No. 1, PageID.5.) The Court considers Petitioner's claim of ineffective assistance below in Part E.1.a

The trial court rejected Petitioner's claim, noting first that Petitioner's claim might be barred from further review because he had raised the claim before on direct appeal and it had been decided against him.[5] (ECF No. 9-7, PageID.1043–1044.) Of course, the court of appeals' decision was premised on Petitioner's *pro per* presentation of the issue in his Standard 4 brief, a presentation that focused on the interpreter's qualifications and not on specific mistranslations. The trial court recognized that Petitioner had not raised his more detailed claims in the court of appeals. (Berrien Cnty Cir. Ct. Op. & Order, ECF No. 9-7, PageID.1044 (stating "to the extent Defendant did not specifically present the same citations and quotes from the trial transcript as part of his appellate challenge to the qualified Spanish interpreter utilized at trial . . .").) It is for that reason that the trial court did not simply rely on Rule 6.508(D)(2) to deny the claim based on the court of appeals' rejection of it, but instead went on to consider whether Petitioner might be entitled to relief under Rule 6.508(D)(3).

Under Rule 6.508(D)(3), the trial court is permitted to grant relief on a motion for relief from judgment if the movant "demonstrates good cause for failure to raise such grounds on appeal . . . and actual prejudice from the actual irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3). "[A]ctual prejudice means that, (i) in a conviction following a trial, (A) but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b). The trial court concluded that Petitioner failed to satisfy the requirements of the rule in both respects: first, Petitioner presented "no reasonable explanation" why he "did not

---

[5] Under Michigan Court Rule 6.508 the state trial court may not grant relief on a motion for relief from judgment on any ground which was "decided against the defendant in a prior appeal . . . unless the defendant establishes that a retroactive change in the law has undermined the prior decision . . . [or] new evidence would make a different result probable on retrial . . . [or] create a significant possibility of actual innocence." Mich. Ct. R. 6.508(D)(2).

specifically present the same citations and quotes from the trial transcript as part of his appellate challenge"; and second, Petitioner "failed to demonstrate . . . [that] actual prejudice resulted." (Berrien Cnty Cir. Ct. Op. & Order, ECF No. 9-7, PageID.1044.) Thus, whether considering the claim as Petitioner raised it in the Michigan Court of Appeals or the claim as he raised it in the trial court, the Michigan courts concluded that Petitioner suffered no prejudice as a result of Mr. Ugalde's translation. It is against that backdrop that the Court considers Petitioner's claim.

"While the general standard for interpreters requires word-for-word translation, occasional lapses in the standard will not necessarily contravene a defendant's constitutional rights." *United States v. Long*, 301 F.3d 1095, 1105 (9th Cir. 2002) (citing *United States v. Lim*, 794 F.2d 469, 470–71 (9th Cir. 1986)). Unless a habeas petitioner can demonstrate some specific mistranslation, he cannot demonstrate prejudice. *See, e.g.*, *Pacheco v. Habti*, 62 F.4th 1233, 1247 (10th Cir. 2023) (concluding that reasonable jurists could not debate the district court's conclusion deferring to the state court's ruling "that although the interpreter was unqualified, Ms. Pacheco was not prejudiced because no specific mistranslations by the interpreter were identified"); *Rodriguez v. Young*, 906 F.2d 1153, 1167 (7th Cir. 1990) (noting that Rodriguez "ha[d] not identified any specific instance of prejudice connected to mistranslated or untranslated statements"); *Koods v. Gonzales*, 129 F.App'x 263, 266 (6th Cir. 2005) (stating, in the context of an asylum hearing, that "[petitioner has not identif[ied] any instances of mistranslation in the record, and, thus, there is no evidence upon which this Court could conclude that [petitioners] suffered a denial of due process").[6]

---

[6] Demonstrating some form of mistranslation is necessary, but not sufficient to establish Petitioner's claim. The mistranslation must result in actual prejudice. *See, e.g.*, *Thapa v. Holder*, 572 F. App'x 314, 318 (6th Cir. 2014) (where, in the context of an asylum hearing, the petitioners challenged an interpreter's confusing translation of a phrase as "sword type of weapons" as opposed to "swords," the court noted that it "is a distinction without a meaningful difference . . . [petitioner's] have not shown that the singular mistranslation resulted in actual prejudice.")

Petitioner contends that there "was well over one hundred times of [Mr. Ugalde's] failure to perform word for word interpretation" that occurred at trial. (ECF No. 2, PageID.94.) Petitioner provides certain examples of what he believes were mistranslated statements in his brief supporting his § 2254 petition. (*Id.*, PageID.94–104.) The examples are the same as the examples provided to the Michigan Supreme Court in the direct appeal application for leave to appeal and in Petitioner's motion for relief from judgment. The Court cannot identify a single instance where Petitioner contends that the witness said one thing and Mr. Ugalde provided an inconsistent interpretation. Petitioner complains that translations are disjointed, that the interpreter's use of the pronoun "he" instead of "I" bespeaks paraphrasing, and that the interpreter explained the meaning of certain idioms. But Petitioner does not identify what it was that Mr. Ugalde put in front of the jurors in English that was different than what the witnesses testified to in Spanish.

Moreover, Petitioner does not dispute his presence at the scene, nor does he meaningfully dispute that he took the items he is accused of taking. His defense centered on the claim that he never went into the dwelling. On that point, the record clearly shows that Petitioner's counsel was able to cross-examine the two Spanish-speaking witnesses and established that neither of them saw Petitioner inside the residence itself. (Trial Tr. II, ECF No. 9-4, PageID.832, 856–857.) In light of the nature of the witnesses' testimony, Petitioner has not and cannot explain how any of his complaints regarding Mr. Ugalde's interpretation of the testimony changed the result.

In sum, Petitioner has failed to demonstrate that the court of appeals' or trial court's respective conclusions that Petitioner suffered no prejudice as a result of Mr. Ugalde's interpretation of the testimony is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground I.

### B.    Ground III—Prosecutorial Misconduct

In his third ground for relief, Petitioner raises four instances of alleged prosecutorial misconduct. (Pet., ECF No. 1, PageID.8.) Petitioner first asserts that during *voir dire*, the prosecutor "began presenting statements of things not in evidence." (*Id.*) Second, Petitioner contends that the prosecutor suggested that Petitioner was responsible for multiple robberies in the area, called Petitioner a liar three times, and told the jury that Petitioner "wasn't man enough to admit what he did." (*Id.*) Third, Petitioner alleges that the prosecutor committed misconduct when, during his rebuttal argument, he stated that "defense counsel was trying to mislead [the jury] to create reasonable doubt." (*Id.*) Finally, Petitioner suggests that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), "when he withheld crime scene photos of the night of the offense." (*Id.*)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

Petitioner raised his prosecutorial misconduct claims in his Rule 6.500 motion, and the trial court rejected them, noting that under state law, jurors are presumed to follow their jury instructions, and alleged misconduct does not warrant reversal if a curative instruction could have alleviated any potential prejudice. (ECF No. 9-7, PageID.1046.) With respect to Petitioner's specific allegations of misconduct, the court stated:

> In this case, the jurors chosen indicated throughout *voir dire* that they could be fair and impartial, that they could set aside outside information and decide the case on the evidence presented, and that they could follow the trial court's instructions. In fact, some potential jurors were excused by the Court from remaining on the jury on the finding that they could not be impartial and fair and/or were challenged by defense counsel based upon perceived partiality, and then excused using a peremptory. Further, once the jury panel was chosen, the Court instructed the chosen jurors not to discuss the case among themselves until the jurors had heard all the evidence, and to not watch media accounts, conduct research, or discuss the case with friends or family. Moreover, the trial court administered the juror oath and otherwise instructed the jury multiple times to consider only "the evidence that was admitted" during trial, and specifically explained as part of the instructions what was not evidence, including the opening and closing statements of counsel.
>
> Turning to [Petitioner's] motion and brief, the submissions are completely void of any good cause explanation why such challenges to the prosecutor remarks were not raised on his direct appeal as required under MCR 6.508(D)(3). Second, [Petitioner] has also failed to establish there was anything improper by the prosecutor's comments, or that such alleged comments caused him actual prejudice. Rather, it is clear to the jury instructions read (and provided in hard copy version) to the jury were sufficient to protect [Petitioner's] right to have a fair trial decided on the evidence presented. On the record, given the instructions provided and the jurors' assurances that they could be impartial, [Petitioner] has failed to show that the prosecutor committed misconduct in his voir dire questions, his opening or closing arguments, or in any comments or questions during examination of the witnesses.

(*Id.* (trial transcript citations omitted).)

Petitioner's four alleged instances of prosecutorial misconduct can be separated into two distinct categories. His first three alleged instances concern comments made by the prosecutor during trial. His second alleges a *Brady* violation. The Court considers each of Petitioner's alleged instances of prosecutorial misconduct below.

17

### 1.  Comments Made During *Voir Dire*

Petitioner first contends that during *voir dire*, the prosecutor "began presenting statements of things not in evidence." (Pet., ECF No. 1, PageID.8.) Petitioner references pages of the trial transcript where the prosecutor was questioning prospective jurors with hypotheticals concerning an individual who entered a home with an intent to steal and ended up taking nothing, and whether that individual should be charged with the same crime as someone who actually stole an item. (Trial Tr. I, ECF No. 9-3, PageID.591–593.) Petitioner does not explain, and the Court does not discern, how these hypotheticals constitute "statements of things not in evidence." Moreover, the trial court instructed the jury on at least two occasions to consider only the evidence admitted during trial, and that statements made by counsel did not constitute evidence. (Trial Tr. I, ECF No. 9-3, PageID.658; Trial Tr. II, ECF No. 9-4, PageID.927.) The trial court's determination that jurors are presumed to follow their instructions is entirely consistent with clearly established federal law. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (noting that "[a] jury is presumed to follow its instructions"). Petitioner has not demonstrated that any comments by the prosecutor during *voir dire* "so infected the trial with unfairness" that Petitioner was denied due process. Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### 2.  References to Other Robberies and Challenges to Petitioner's Credibility

Petitioner next faults the prosecutor for referencing "multiple area robberies," calling Petitioner a liar three times, and telling the jury that "Petitioner wasn't man enough to admit what he did." (Pet., ECF No. 1, PageID.8.)

First, Petitioner suggests that the prosecutor implied that Petitioner committed the other robberies that had occurred in the area. A review of the record, however, indicates that is not so. During opening statements, the prosecutor remarked:

> Now, over the course of the last summer, several of the workers complained to Dustin Skibbe that when they would come back at the end of the day, go to their houses, they noticed some personal items were missing. And, Dustin got enough complaints that he decided to buy several trail cams. And you put those up at two distinct places on his farm to see if they could record anything or anybody being someplace where they shouldn't.
>
> Now, as it turns out, that was a pretty good idea. In fact, without those cameras, we may very well not be here today.

(Trial Tr. I, ECF No. 9-3, PageID.691.) During trial, Skibbe testified that he had installed the two cameras because of the prior complaints about theft. (*Id.*, PageID.724.) During closing arguments, the prosecutor stated:

> There is evidence that he took returnable cans and—and put that in his truck as well, which, if you'll recall, was one of the reasons Mr. Skibbe put up those cameras in the first place, because, people had been coming to the farm and taking personal items, including cans.

(Trial Tr. II, ECF No. 9–4, PageID.906-907.)

At no time did the prosecutor imply that Petitioner was responsible for the other thefts and robberies. Rather, the information about the prior thefts was used to show why Skibbe had placed the trail cameras on the property and how video footage of the night in question had been captured. Petitioner simply has not shown that these comments "so infected the trial with unfairness" that he was denied due process.

Petitioner next suggests that the prosecutor impugned Petitioner's credibility during closing arguments by calling him a liar three times and by stating that "Petitioner wasn't man enough to admit what he did." Specifically, Petitioner takes issue with the prosecutor's statements during closing arguments that referred to Petitioner's statement to Detective Smit:

> Initially, he told Detective Smith: I wasn't there. I was—I was at a friend's house. I'd loaned my car to somebody else and he told me that it got hit while he was parked. Then Detective Smit kind of says: Well—Well, wait a minute, we got two people who identify you—White male, bald, glasses, same built. And then Mr. Mott says: Well, okay, I guess I was there. But I wasn't at the farm. And then Detective Smit says—shows him the picture from that trail cam of his truck. Okay, I guess I

19

was there, but I was only there to backle—back up. I was trying to get through to Red Arrow Highway, wanted to back up, that was my only reason, takin' a shortcut. And then, he starts asking about alcohol, whether he did it because you whatever, and—and Mr. Mott says: Well, you know, I did take three or four Xanax and, really, I don't remember much that night other than, I was hit. I was hit. Detective Smit says: Well, if somebody says you did try to reach into the car, could that be possible? Yeah, yeah, I guess it could. And if someone says you took that picnic table, could that be possible? Um, well, yeah. I—I don't remember, right? Wasn't there but if I was, I didn't do it, and if I did, I was strung out on Xanax.

The other funny thing about this, that strikes me as funny, is he's still lying, right? He's still lying. Because, he did take the picnic table and he knew it. He had the presence of mind to know what kind of truck hit him, where he was at, where he turned around, how long he was there, that he remembered going to Dave's house and then Kurt's, or whatever, afterwards, of course he remembered. He was still lying. "It---Uh—Ah, I—I don't remember. I was high.["] He wasn't man enough to admit what he did. That's what he's doing today by—here at the trial.

(Trial Tr. II, ECF No. 9-4, PageID.920–921.)

A prosecutor may not "offer [his or her] opinions as to credibility of a witness or the guilt

of a defendant." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18–19 (1985) However, "a prosecutor may ask the jury to draw

reasonable inferences of credibility from the evidence presented." *Willoughby v. White*, 786 F.

App'x 506, 513 (6th Cir. 2019).

Furthermore, where the prosecutor's attack on a defendant's credibility is based on the

evidence presented in court, the attack is not improper. A prosecutor may assert that a defendant

is lying during closing argument when emphasizing discrepancies between the evidence and a

defendant's testimony. *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994). Such

20

comments, however, must "reflect reasonable inferences from the evidence adduced at trial." *See id.* (quoting *United States v. Goodapple*, 958 F.2d 1402, 1409–10 (7th Cir. 1992)). Here, while Petitioner did not testify at trial, Detective Smit testified that he interviewed Petitioner after learning that the truck in question was registered to Petitioner's mother. The prosecutor then played the video recording of that interview for the jury. (Trial Tr. II, ECF No. 9-4, PageID.882.)

Upon review of the record, the Court concludes that where the prosecution referred to Petitioner as a liar and said that he was not "man enough" to admit what he did, the prosecutor tied his arguments to the evidence offered at trial or reasonable inferences from that evidence. Petitioner does not point to any part of the prosecutor's argument that suggests that the prosecutor invited the jurors to accept the characterization of Petitioner as a liar simply because the prosecutor believed that to be the case. Furthermore, as noted above, the jury was instructed that closing arguments did not constitute evidence, and jurors are presumed to follow their instructions. *See Weeks*, 528 U.S. at 234. Petitioner has not demonstrated that the remarks made by the prosecutor "so infected the trial with unfairness" that Petitioner was denied due process. Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### 3.    Statement During Rebuttal Argument

Third, Petitioner argues that the prosecutor "attacked Petitioner's trial counsel when, during his rebuttal argument, he stated to the jury that 'defense counsel was trying to mislead them to create reasonable doubt.'" (Pet., ECF No. 1, PageID.8.) As an initial matter, a review of the trial transcripts reveals that this exact statement was not made by the prosecutor. Rather, during rebuttal, the prosecutor stated:

> Defense attorney gives us 10 top reasons why you should have reasonable doubt.
> And I'm not gonna hit on all of them. But, most of them are easily explained away,
> if you listen to the evidence, or redundant or—or irrelevant.

> For instances, the headlights—or—or, the lights; no lights outside; well, what does that really matter when he, as much, got up and admitted that, yes, my client was there that night, driving on a suspended license, and yes, he took the table? What does it matter what kind of lighting there was as long as there was a headlight? Two witnesses ID'd him, dark or not, he admits that he was there. Just thrown out to confuse you, take your mind on to something else, invent, reasonable doubt.

(Trial Tr. II, ECF No. 9-4, PageID.921–922.) The prosecutor also addressed alleged inconsistent statements pointed out by Petitioner's counsel and argued that those statements were not inconsistent and, even if they were, they "hurt [Petitioner's] case more than helps it." (*Id.*, PageID.923.)

A prosecutor may not "make unfounded and inflammatory attacks on the opposing advocate." *United States v. Young*, 470 U.S. 1, 9 (1985). Furthermore, it is improper for a prosecutor to argue that defense counsel "is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (citation omitted). Upon review of the remarks made by the prosecutor, the Court cannot agree with Petitioner that they constituted "unfounded and inflammatory attacks" and argued that Petitioner's counsel was attempting to mislead the jury. Rather, the remarks "were not so much a personal attack on counsel as a commentary on the strength of the merits of [Petitioner's] defense." *United States v. Graham*, 125 F. App'x 624, 634 (6th Cir. 2005). Moreover, as noted above, the trial court instructed the jury that remarks made by counsel during opening statements and closing arguments were not evidence, and a jury is presumed to follow its instructions. *See Weeks*, 528 U.S. at 234. Petitioner has not demonstrated that the remarks made by the prosecutor during his rebuttal argument "so infected the trial with unfairness" that Petitioner was denied due process. Petitioner, therefore, is not entitled to relief with respect to this assertion of prosecutorial misconduct.

### 4.       Alleged *Brady* Violation

Finally, Petitioner contends that the prosecution violated *Brady* by "[withholding] crime scene photos of the night of the offense." (Pet., ECF No. 1, PageID.8.) According to Petitioner, these photographs were of the "front steps that Petitioner was alleged to have been standing on in the night in question." (ECF No. 2, PageID.115.) Petitioner suggests that if these photographs had been provided to the defense, counsel "would have then been able to debunk the state witness's testimony, and shown the impossibility of Petitioner or anyone standing on these steps at the same instance of the door opening or closing." (*Id.*, PageID.116.) As part of his claim, Petitioner asserts that the prosecution fabricated evidence by going to the house in question and asking one of the witnesses to open cabinets and drawers in the kitchen and then taking photographs. (*Id.*, PageID.115.)

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

During his redirect of Detective Smit, the prosecutor asked the detective if he had photos that Detective Kreiner had taken the evening of the offense; Detective Smit responded that he did. (Trial Tr. II, ECF No. 9-4, PageID.888.) Petitioner's counsel objected, stating that he had not seen the photos and it was the "first [he had] learned of these." (*Id.*) The prosecution then allowed Petitioner's counsel to review the photos. (*Id.*)

Petitioner, however, has not demonstrated that the photographs in question were exculpatory. During closing arguments, Petitioner's counsel called attention to the fact that the one witness never saw the screen door move. (*Id.*, PageID.912.) Petitioner's counsel also noted that the slamming sound could have been made by a different door. (*Id.*, PageID.913.) Likewise, counsel called attention to the fact that the first time all of the witnesses saw Petitioner, he was outside of the house. (*Id.*, PageID.913–914.) Nevertheless, the evidence presented allowed the jury to reasonably infer that Petitioner had been inside the house with the intent to commit larceny and that he had stolen the picnic table and bag of removable cans from outside the house. Given the evidence presented, Petitioner has not demonstrated that the failure to provide the photographs in question prior to trial prejudiced his defense in any way. *See Smith v. Cain*, 565 U.S. 73, 75 (2012) (noting that evidence is material under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different"). Whether Petitioner was able to stand on the steps and close the screen door at the same time was not material to the prosecutor's case against Petitioner. Petitioner, therefore, is not entitled to relief with respect to his *Brady* claim.

Likewise, Petitioner's assertion that the prosecutor fabricated evidence lacks merit. During Mr. Correa's testimony, the prosecutor elicited that there was a day when he and the detective came to the house and asked Mr. Correa to "open the drawers and cabinet doors the way that [he had seen] them that night." (Trial Tr. II, ECF No. 9-4, PageID.847.) Petitioner's counsel then conducted *voir dire* regarding the photograph. (*Id.*) Detective Smit supplied that the photograph was taken on September 22, 2016, two months after the incident. (*Id.*, PageID.848.) Mr. Correa testified that he "opened [the cabinets and drawers] exactly the way they were" on the night in question for the prosecutor and detective to take photographs. (*Id.*, PageID.847.) The jury,

24

therefore, was well aware that the photograph in question was not taken the night of the offense. Because the scene was recreated for photographs does not automatically mean that the prosecution fabricated evidence and presented false evidence, and Petitioner has failed to show otherwise.

In sum, Petitioner has failed to demonstrate that the trial court's rejection of his prosecutorial misconduct claims is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### C.      Ground IV—Sufficiency of the Evidence

As his fourth ground for relief, Petitioner contends that the prosecution "failed to present sufficient evidence to prove home invasion beyond a reasonable doubt." (Pet., ECF No. 1, PageID.10.) Specifically, Petitioner contends that the prosecution did not introduce sufficient evidence to show that Petitioner "cross[ed] the threshold of a dwelling" to satisfy the "element of entry." (*Id.*)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most

favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals stated with respect to the standard of review:

> "This Court reviews de novo challenges to the sufficiency of the evidence." *People v. Solloway*, 316 Mich. App. 174, 180; 891 N.W.2d 255 (2016). "Taking the evidence in the light most favorable to the prosecution, the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Hardiman*, 466 Mich. 417, 421; 646 N.W.2d 158 (2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999) (quotation marks and citation omitted). "In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses." *Solloway*, 316 Mich. App. at 180. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich. at 428.

*Mott*, 2018 WL 3551582, at *1. Although the appellate court cited state court authority for the standard, the standard applied is identical to *Jackson*. Moreover, if one looks to *Solloway*, *Hardiman*, and *Carines* and the cases cited therein in support of the standard, eventually the source of the standard is identified as *Jackson*. *See People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992).

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard—here *Jackson* rather than *Strickland*—Petitioner can only overcome the deference afforded state court decisions if the determination regarding the sufficiency of the evidence is an unreasonable application of *Jackson* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d).

The court of appeals first identified the elements of first-degree home invasion. *See Mott*, 2018 WL 3551582, at *1. The court then reviewed the record evidence in a light most favorable to the prosecution, stating:

> Regarding the first element, although no one actually saw [Petitioner] inside the dwelling, the prosecutor presented sufficient evidence to establish that [Petitioner] entered the building without permission. First, a witness saw [Petitioner] outside loading the picnic table in his truck, and [Petitioner] then "kind of disappeared." The witness then heard the screen door slam and saw [Petitioner] leave the house and walk down the steps from the front door toward the maroon truck. Likewise, a second witness, who was asleep inside the dwelling, testified that he woke up when he heard the screen door slam. The witness then saw a man going down the front steps. After seeing a man on the steps, the witness found all of the drawers and cabinets in the kitchen open, yet all of the drawers and cabinets had been closed when he went to sleep. While [Petitioner] speculates that someone else in the house could have opened the drawers and cabinets, the only other people in the house went to sleep before the witness and they were still in bed when the witness checked on them after hearing the screen door slam. Given this evidence, the jury could reasonably infer that [Petitioner] entered the house. See *Carines*, 460 Mich. at 757. Additionally, the testimony was clear that [Petitioner] did not have permission to be in the house. Viewed in the light most favorable to the prosecution, a jury could rationally conclude that [Petitioner] entered the dwelling without permission. See MCL 750.110a(2); *Hardiman*, 466 Mich. at 421.

> In regard to the second element, the prosecution presented evidence that [Petitioner] had the intent to commit a larceny when entering the dwelling. "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v. Hawkins*, 245 Mich. App. 439, 458; 628 N.W.2d 105 (2001). "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v. Harverson*, 291 Mich. App. 171, 178; 804 N.W.2d 757 (2010). Both the manager and another witness testified that they saw [Petitioner] steal the picnic table from just outside the dwelling, and a bag of returnable cans that had been next to the front door was also missing after [Petitioner] left. [Petitioner] fled the scene in the maroon truck, even after an employee crashed a vehicle into [Petitioner's] truck in an effort to stop [Petitioner]. Given the evidence that [Petitioner] stole items, opened drawers and cabinets inside the home, and fled when confronted, a rational juror could infer that [Petitioner] was looking for something to steal when he entered the dwelling, satisfying the second element of first-degree home invasion. See MCL 750.110a(2); *Hawkins*, 245 Mich. App. at 458. Overall, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find [Petitioner] guilty of first-degree home invasion beyond a reasonable doubt. See *Hardiman*, 466 Mich. at 421.

*Mott*, 2018 WL 3551582, at *2.

Petitioner does not challenge the recitation of record evidence offered by the court of appeals. Rather, Petitioner reiterates his arguments raised on appeal—that there was "absolutely no proof [that he] entered the dwelling," and that there was no proof that he intended to commit a larceny because "nothing was broken[] or stolen from the dwelling." (ECF No. 2, PageID.122.) Petitioner contends that no one saw him entering or exiting the dwelling, and that the only evidence against him consists of "'inferences' created by nothing more than that of a sound resembling that of a door closing." (*Id.*)

Petitioner's invitation to just ignore the inferences that the court of appeals identified and that favor the prosecution turns the *Jackson* standard on its head. Under *Jackson*, a habeas court is not required to sift through the evidence and place it on one side of the scale or the other for the purpose of assessing whether the jurors' estimation of the balance is correct. Instead, the Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt considering that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are reasonable.

In *Coleman v. Johnson*, 566 U.S. 650, 655 (2012), the Supreme Court provided some guidance with respect to the distinction between a reasonable inference and mere speculation. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation, and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Petitioner has not shown that the inferences identified by the court of appeals are irrational. One of the witnesses identified Petitioner as the man who he saw walking away from the dwelling

after the witness heard the screen door slam. Likewise, witnesses testified that drawers and cabinets inside the dwelling had been opened, and that a picnic table, as well as a bag of returnable cans that was sitting right outside, had gone missing. If the jurors credited that testimony—and it is apparent that they did—it was rational for the jurors to infer that someone had been in the dwelling, someone had taken those items, and that "someone" was Petitioner.

Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support his first-degree home invasion conviction is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground IV.

### D.     Ground V—Trial Court Errors

As his fifth ground for relief, Petitioner asserts numerous instances of alleged trial court error. (Pet., ECF No. 1, PageID.10.) Specifically, Petitioner takes issue with the trial court's decision to allow Mr. Ugalde to be the interpreter during trial, allowing the prosecution to reference other robberies in the area, and allowing the prosecution to commit a *Brady* violation. (*Id.*) As explained above, Petitioner's prosecutorial misconduct claims are without merit. Moreover, as discussed above, Petitioner can identify no prejudice resulting from Mr. Ugalde's translation of the trial testimony. Petitioner, therefore, cannot demonstrate that the state courts' rejections of his assertions of trial court error are contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground V.

### E.     Ground VIII—Juror Issue

As his eighth ground for relief, Petitioner contends that the trial court committed error by refusing to excuse a juror for cause. (Pet., ECF No. 1, PageID.14.) According to Petitioner, the potential juror was a "close acquaintance" of the complaining witness. (*Id.*) Petitioner argues that

he was forced to use a peremptory challenge to remove that juror and, therefore, was not able to use that challenge "on another prospective juror, one who[] actually made it onto the jury." (*Id.*)

During *voir dire*, Juror 3 admitted that he "happen[ed] to know Mr. Dustin Skibbe. The one witness that you had named off this morning." (Trial Tr. I, ECF No. 9-3, PageID.641.) Juror 3 noted that Mr. Skibbe was an "acquaintance," and that he lived by the farm. (*Id.*) The trial court asked Juror 3 if he thought the fact that he was acquainted with Mr. Skibbe would "affect [his] ability to sit and listen to the evidence and judge it impartially"; Juror 3 responded that it would not. (*Id.*)

Petitioner's counsel then asked the trial court to excuse Juror 3 "for cause based on knowing—his relationship with the witness today." (*Id.*, PageID.642.) The court responded that it did not "see it so far" and invited counsel to ask "a few more questions" of Juror 3. (*Id.*) During that questioning, Juror 3 noted that he owned property that "abuts up to the farm so [he saw Mr. Skibbe] on a daily basis out working the fields." (*Id.*, PageID.642–643.) Juror 3 stated it had "been a while" since he talked to Mr. Skibbe, and that the conversation was "about what to plant in the field." (*Id.*, PageID.644.)

The prosecutor then asked Juror 3 about his relationship with Mr. Skibbe. (*Id.*) Juror 3 responded "it's not like we get together and hang out all the time. I come in contact with him because, like I said, my house abuts up to one of the farms." (*Id.*) Juror 3 referenced the relationship as a "close acquaintance," but that they did not exchange Christmas cards or attend birthday parties. (*Id.*, PageID.645.) Juror 3 indicated that he would "absolutely" "be able to gauge [Mr. Skibbe's] credibility just like [he] would anybody else" because "[e]veryone gets a fair chance." (*Id.*)

31

Following that questioning, Petitioner's counsel asked the court to still dismiss Juror 3 for cause. (*Id.*, PageID.645–646.) The court denied that request, and counsel exercised a peremptory challenge. (*Id.*)

The Sixth Amendment "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The presence of just one biased juror deprives a defendant of his right to an impartial jury. *See Morgan v. Illinois*, 504 U.S. 719, 729 (1992). When faced with an allegation of bias, a trial court must consider whether "a juror [swore] that he could set aside any opinion he might hold and decide the case on the evidence, and [whether] the juror's protestation of impartiality [should be] believed." *Patton v. Yount*, 467 U.S. 1025, 2036 (1984).

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citing *Patton*, 467 U.S. at 1036); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). Petitioner bears the burden to establish the existence of juror bias which caused him to suffer actual prejudice. *See Smith*, 455 U.S. at 215–17 (stating that petitioner bears the burden to demonstrate that he suffered "actual bias" as a result of juror misconduct); *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000); *Sheppard v. Bagley*, 657 F.3d 338, 348–49 (6th Cir. 2011) (Batchelder, J., concurring). A state court decision based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect. *Keith v. Mitchell,* 455 F.3d 662, 669 (6th Cir. 2006) (citing *Williams,* 529 U.S. at 409–11); *see also Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002). The state court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner raised this claim on direct appeal, and the Michigan Court of Appeals rejected

his argument. *Mott*, 2018 WL 3551582, at *3. Specifically, the court of appeals noted:

> Relying on MCR 2.511(D)(2), (3), and (4),[] [Petitioner] maintains that Juror 3 should have been dismissed for cause because he was biased and had preexisting opinions that would prevent him from rendering a just verdict. [Petitioner] raised this argument during voir dire, challenging Juror 3 for cause because of purported bias arising from his relationship with the manager. The trial court denied the challenge for cause, and [Petitioner] thereafter exercised a peremptory challenge to have Juror 3 dismissed from the jury.
>
> On these facts, [Petitioner] is not entitled to relief. First of all, [Petitioner] did not meet his burden of showing that Juror 3 was biased or incapable of rendering a just verdict due to preexisting opinions. At most, Juror 3 described the manager as "a close acquaintance;" and Juror 3 explained that Skibbe Farms owned a field that abutted his own property. However, Juror 3 stated that he and the manager did not "get together and hang out;" they were not close enough to attend birthday parties or send Christmas cards to each other; and he had never talked to the manager about this case. Juror 3 maintained that he could remain impartial and assess the manager's credibility as he would anyone else. Considering the nature of the relationship described by Juror 3, we find that the mere fact that he was acquainted with a prosecution witness did not necessitate the conclusion that he was biased or had opinions that would improperly influence his verdict, particularly when the juror affirmatively stated that he could be impartial. See *People v. Emerson*, 203 Mich. App. 345, 349; 512 N.W.2d 3 (1994); *People v. Walker*, 162 Mich. App. 60, 64–65; 412 N.W.2d 244 (1987). Consequently, [Petitioner] has not shown cause for dismissing Juror 3 under MCR 2.511(D), and the trial court did not abuse its discretion by denying [Petitioner's] challenge for cause. See *Eccles*, 260 Mich. App. at 382–383; *Williams*, 241 Mich. App. at 521. In any event, even assuming arguendo that Juror 3 should have been excused for cause, we also find that [Petitioner] would not be entitled to relief because, although he used all of his peremptory challenges, there is no evidence that [Petitioner] "desire[d] to excuse another subsequently summoned juror" or that any other juror was "objectionable." *Legrone*, 205 Mich. App. at 81 (quotation marks and citation omitted). To the contrary, defense counsel ultimately indicated that he was "satisfied" with the impaneled jury. [Petitioner's] argument is without merit.

*Mott*, 2018 WL 3551582, at *3 (footnote omitted).

As an initial matter, the court of appeals' determination that, as a matter of state law, the

trial court did not abuse its discretion by denying Petitioner's challenge to Juror 3 for cause is

binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v.*

*Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state

law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

. Moreover, Petitioner has failed to offer any evidence, much less clear and convincing evidence, that the court of appeals' factual determination that Petitioner had not shown cause for dismissing Juror 3 was unreasonable. The court of appeals acknowledged Juror 3's description of his relationship with Mr. Skibbe as a "close acquaintance." However, as noted by the court of appeals, Juror 3 stated that he could remain impartial and assess Mr. Skibbe's credibility like he would any other witness.

Whether or not Juror 3 was biased against Petitioner, that bias did not impact the verdict because Juror 3 was not on the jury. Petitioner bears the burden to establish the existence of juror bias which caused him to suffer actual prejudice. *See Smith*, 455 U.S. at 215–17. Petitioner offers only that he was precluded from peremptorily challenging some other juror, for example "the juror who actually became the foreman for the jury. (ECF No. 2, PageID.150.) Petitioner alleges that this individual had served on other trials, all which resulted in jury verdicts, and that he "was of Spanish descent and was in favor of the two non-English speaking witnesses for the state." (*Id.*) Alternatively, Petitioner offers that a pregnant individual was on the jury, and that he would have dismissed her because "she was far enough along into the pregnancy that her hormones were raging." (*Id.*) Petitioner's assertions, however, are rank speculation, and he provides no evidence that these jurors were actually biased against him.

In sum, Petitioner has failed to show that the court of appeals' rejection of his juror bias claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground VIII.

F.     **Ineffective Assistance of Trial and Appellate Counsel**

Several of Petitioner's grounds for relief contend that trial and appellate counsel failed to provide effective assistance. The Court considers each of Petitioner's arguments regarding ineffective assistance below.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745,

751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

When addressing Petitioner's claims of ineffective assistance, the trial court noted that the "seminal test" for evaluating such claims was articulated in *Strickland*. (ECF No. 9-7, PageID.1047.) The court noted further that "[t]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." (*Id.*, PageID.1048.) Although the trial court also cited state authority to flesh out the standard applicable to Petitioner's claims, the state court's application of *Strickland* eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. Therefore, because the trial court

applied the correct standard, Petitioner can only overcome the deference afforded state court decisions if the determinations regarding ineffective assistance of counsel are unreasonable applications of *Strickland* or if the state court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

### 1.    Ineffective Assistance of Trial Counsel

### a.    Failure to Object to Interpreter

As part of Ground I, Petitioner contends that trial counsel was ineffective for "failing to continue his objection" to the errors made by Mr. Ugalde. (Pet., ECF No. 1, PageID.5.) Petitioner also alleges that counsel failed to object to Mr. Ugalde only being qualified and not certified. (*Id.*)

As explained above, Petitioner has failed to demonstrate any prejudice that followed from Mr. Ugalde's translation. Thus, even if counsel should have objected—or objected more strenuously—the failure to do so made no difference. Accordingly, Petitioner has failed to demonstrate that the state courts' determinations that counsel was not ineffective for failing to raise objections to Mr. Ugalde and the interpretations made by him is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance.

### b.    Ground VI—Numerous Ineffective Assistance Challenges

As his sixth ground for relief, Petitioner contends that he was denied effective assistance of trial counsel. (Pet., ECF No. 1, PageID.11.) Specifically, Petitioner asserts six instances where he believes counsel rendered ineffective assistance. (*Id.*) The trial court summarily dismissed the ineffective assistance claims raised by Petitioner in his Rule 6.500 motion. (ECF No. 9-7 at 1047–1048.) The Court considers each in turn below.

### (i)      Failure to Investigate

Petitioner first faults counsel for "fail[ing] to investigate the crime scene, interview any witnesses[, and failing to] investigate the lighting or lack of lighting in order to ascertain whether witnesses were being truthful or mistaken." (Pet., ECF No. 1, PageID.11.) Specifically, Petitioner contends that counsel "never explored the two step porch dimensions in comparison to the door swing." (ECF No. 2, PageID.132.) According to Petitioner, there is "no way" a person could be standing on the porch steps and have the door close at the same time; thus, the slamming noise "could have only come from the tailgate of the truck being slammed shut, or truck door slamming." (*Id.*) Petitioner also contends that had counsel investigated the lighting, he would have been able to cross-examine the one witness about how he claimed that Petitioner appeared to be coming out of the house. (*Id.*, PageID.133.)

As an initial matter, Petitioner has not presented any affidavits from any purported witnesses to support his ineffective assistance claim. Such a speculative claim does not entitle him to habeas relief because Petitioner has failed to provide a "basis on which to conclude that failure to call a possibly favorable witness amounts to constitutionally deficient performance." *Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007).

Moreover, Petitioner has not demonstrated how he was prejudiced in any way by counsel's failure to investigate the crime scene and lighting. During his cross-examination of Angilberto Correa Harro, Petitioner's counsel had the witness admit that the light in front of the house was off that night. (Trial Tr. I, ECF No. 9-3, PageID.808.) Mr. Correa Harro also admitted that his view of the door was blocked by the truck. (*Id.*, PageID.809.) Petitioner's counsel also got Mr. Correa Harro to admit that when he testified at the preliminary examination, he stated that there were "no outside lights, no lights in the area." (Trial Tr. II, ECF No. 9-4, PageID.828.) The jury was also

told that the screen door swung out, and photographs of the steps were introduced. (*Id.*, PageID.841, 844.) Moreover, during his cross-examination of Angilberto Correa, Petitioner's counsel had the witness admit that there were no lights on in the dwelling. (*Id.*, PageID.857.) Mr. Correa testified further that a "loud" noise, like a slamming door, woke him from his sleep. (*Id.*, PageID.855.) During closing arguments, counsel argued that the lack of lighting provided reasonable doubt, that no one saw the screen door open and shut, and that there were other doors to consider that could have made the slamming noise. (*Id.*, PageID.912–913.)

Given this, Petitioner has not demonstrated how any further investigation by counsel regarding the crime scene and the lighting would have changed the outcome of the jury verdict. Moreover, Petitioner has not demonstrated what more counsel should have done besides calling attention to the lack of lighting, the fact that no one saw the door move, and the fact that other doors could have caused the slamming noise. Indeed, Petitioner has not explained, and the Court does not discern, how any further testimony regarding the source of the slamming noise and the lighting would have exonerated Petitioner in any way. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

### (ii)      Failure to Object to Comments and Photographs

Petitioner also faults counsel for objecting to what Petitioner refers to as the "prosecutor's demeaning of Petitioner, telling the jury 'he wasn't man enough to admit what he did,' and calling him a liar three times." (Pet., ECF No. 1, PageID.11.) Additionally, Petitioner believes counsel should have objected to the prosecution's use of photographs that were taken almost three months after the offense." (*Id.*) As thoroughly discussed *supra*, no prosecutorial misconduct occurred, and it would have been futile for counsel to raise these objections. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating that "[o]mitting meritless arguments is neither professionally

unreasonable nor prejudicial.") Petitioner, therefore, is not entitled to relief for these claims of ineffective assistance.

### (iii)      Failure to Develop Sound Trial Strategy

Petitioner next faults counsel for not developing a "sound trial strategy by not addressing specific testimony or lack thereof from states witnesses and offer proper alternatives." (Pet., ECF No. 1, PageID.11.) In his brief in support, Petitioner contends that counsel "did not use evidence" and "did not investigate [Petitioner's] claims." (ECF No. 2, PageID.134.) Petitioner provides no details regarding what evidence he refers to and what testimony he believes counsel should have better addressed. Petitioner's vague and conclusory allegations simply do not entitle him to relief for this assertion of ineffective assistance. *See Post v. Bradshaw*, 621 F.3d 406, 419 (6th Cir. 2010) (absent articulation of factual contentions to support ineffective assistance claim, a petitioner has no entitlement to relief).

### (iv)      Failure to Object to *Brady* Violation

Next, Petitioner faults trial counsel for failing to object to the prosecution's alleged *Brady* violation, i.e., the "failure to produce crime scene photos of the night in question, which would have been beneficial to defense, as the photos could have been used to show inconsistencies in witness testimony." (Pet., ECF No. 1, PageID.11.) As discussed *supra*, no such *Brady* violation occurred, and it would have been futile for counsel to raise such an objection. *See Coley*, 706 F.3d at 752. Petitioner, therefore, is not entitled to relief for this claim of ineffective assistance.

### (v)      Failure to Move for Directed Verdict

Finally, Petitioner faults counsel for not moving for a directed verdict after the prosecution rested based upon an argument that the prosecution "failed to prove the element of entry" for purposes of first-degree home invasion. (Pet., ECF No. 1, PageID.11.) As thoroughly discussed

*supra*, the prosecution presented sufficient evidence to support Petitioner's first-degree home invasion conviction, and there was sufficient evidence presented to allow the jury to infer that Petitioner had been the one to enter the home. Accordingly, counsel had no hope of prevailing on a motion for a directed verdict, and "[n]o prejudice flows from the failure to raise a meritless claim." *See Mahdi*, 522 F.3d at 638. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

In sum, Petitioner has not demonstrated that the state courts' rejection of his ineffective assistance claims is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground VI.

### c.    Ground VII—Failure to Raise Sentencing Challenges

In his seventh ground for relief, Petitioner contends that trial counsel "was ineffective in failing to investigate and properly argue [inaccuracies] in habitual charge and improper scoring of [Prior Record Variable (PRV)] 1, PRV2, PRV5, and [Offense Variable (OV)] 3, and OV9." (Pet., ECF No. 1, PageID.13.) Specifically, Petitioner alleges that had counsel investigated Petitioner's pre-sentence investigation report, counsel would have found that the State "used two felonies that stemmed from a single incident to form the habitual charge in violation of state and federal statutes and court rules." (*Id.*) Petitioner also argues as follows:

> PRV 1 was scored at 75 where it should have been 25, as the only one high severity crime could have been used. PRV 5 was scored at 15 where it should have been scored at 2 since only one misdemeanor charge could have been used. OV 3 was scored using "judicial fact finding" and was scored at 5, where it should have been scored at 0. OV 9 was scored at 10, where it should have been scored at 0 since there was no weapon involved and no person was placed in danger, where mere presence does not constitute danger. Proper guideline minimum range would have been 36 to 60 months, not the 78 to 250 months scored by the state. Also new retroactive case as to the use of Michigan guidelines scheme being unconstitutional

where the use of "judge found facts" is involved, in violation of *Alleyne*[*v. United States*, 570 U.S. 99 (2013)].

(*Id.*)

The trial court summarily dismissed Petitioner's claim, stating:

Also, to the extent [Petitioner] raises additional bases for his ineffective assistance of counsel claims, including but not limited to proffering additional challenges or arguments to [Petitioner's] habitual offender status, and/or the scoring of his sentencing guideline variables (Brief, 5/8/20, pp 35–42), he is likewise barred under MCR 6.508(D)(3), as he has failed to demonstrate "good cause" or "actual prejudice." The three convictions that counted toward [Petitioner's] habitual offender status were specifically addressed at sentencing, including clarification provided by defense counsel. (Sent Tr, pp 4-5). Similarly, the scoring variables were also addressed, with challenges and objections raised by defense counsel. (Sent Tr, pp 5–8). There has been no showing of prosecutorial misconduct or ineffective assistance of trial counsel demonstrated as to how either of those areas of sentencing were handled by counsel or the Court.

(ECF No. 9-7, PageID.1047–1048.)

Petitioner first takes issue with counsel's failure to object to the fourth-offense habitual offender charge, arguing that the State treated two charges that arose out of a single incident as "separate incidents for the purpose of [Petitioner's] habitual charge." (ECF No. 2, PageID.138.)

At sentencing, the trial court stated:

And, I just want to confirm that the three felonies that were being used for purposes of the [habitual offender charge] were the July 19th, 2007 conviction for Manslaughter here in Berrien County; the July 19th, 2007 conviction for Assault with a Dangerous Weapon here in Berrien County, and that was by jury verdict in matter 2006403209; and then the third felony referenced is March 2nd, 2016 conviction for Unlawful Use of an Automobile—I believe that was pursuant to plea—yes, plea entered on March 2nd of 2016, sentenced on April 14th of 2016, and I have that in the matter of 2015005314.

(Sentencing Tr., ECF No. 9-5, PageID.952.) Counsel did clarify that the unlawful use conviction was a two-year high court misdemeanor, but the prosecutor and the court noted that it counted as an additional felony for purposes of the habitual offender statute. (*Id.*)

42

Petitioner contends that because the manslaughter and assault with a dangerous weapons convictions arose from the same incident, they should not have counted as two separate felonies. Nowhere in the relevant statute—Mich. Comp. Laws § 769.12—does it require that the predicate felonies arise from separate criminal incidents as argued by Petitioner. Indeed, in 2008, the Michigan Supreme Court overruled prior case law and held that the "habitual offender laws contemplate counting *each* prior felony conviction separately. The text of those laws does not include a same-incident test." *People v. Gardner*, 753 N.W.2d 78, 95 (Mich. 2008). Petitioner was not prejudiced by counsel's failure to argue otherwise, as such an argument would have been meritless. *See Mahdi*, 522 F.3d at 638.

Next, Petitioner takes issue with the scorings of PRVs 1, 2, and 5. PRV 1 provides that a defendant is scored 75 points if he or she has three or more prior high severity felony convictions. *See* Mich. Comp. Laws § 777.51(1)(a). A "prior high severity felony conviction" refers to any crime that is, *inter alia*, "listed in offense class M2, A, B, C, or D." *Id.* § 777.51(2)(a). Petitioner indicates that he has three prior felonies that were counted for PRV 1—involuntary manslaughter and two breaking and entering convictions. (ECF No. 2, PageID.140.) Petitioner, however, contends that only the involuntary manslaughter conviction could be counted because it is "within the 10-year gap." (*Id.*)

PRV 2 provides that a defendant is scored 30 points if he or she has four or more prior low severity felony convictions. *See* Mich. Comp. Laws § 777.52(1)(a). A "prior low severity felony conviction" refers to any crime that is, *inter alia*, "listed in offense class E, F, G, or H." *Id.* § 777.52(2)(a). Petitioner contends that he only has two low severity felonies, that his two high court misdemeanors cannot be used as felonies, and that only one of the low severity felonies falls within the "10-year gap" rule. (ECF No. 2, PageID.140.)

Finally, Petitioner takes issue with the scoring of PRV 5, which scores prior misdemeanor convictions or prior misdemeanor juvenile adjudications. *See* Mich. Comp. Laws § 777.55. Petitioner received 15 points for having 5 or 6 prior misdemeanor convictions or prior misdemeanor juvenile adjudications. *See id.* § 777.55(1)(b). Petitioner contends that he should have only received 2 points because only one of those misdemeanors "falls within the 10-year gap rule." (ECF No. 2, PageID.141.)

Petitioner's reference to the "10-year gap" implicates Mich. Comp. Laws § 777.50, which states, in pertinent part:

> (1) In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.
>
> (2) Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and determine the time between the commission date of that prior conviction and the discharge date of the next earlier prior conviction or juvenile adjudication. If that period is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and repeat this determination for each remaining prior conviction or juvenile adjudication until a period of 10 or more years is found or no prior convictions or juvenile adjudications remain.

*Id.* § 777.50(1)–(2).

As an initial matter, Petitioner's assertion that any prior felonies or misdemeanors that occurred well more than 10 years prior to the sentencing date for the instant convictions could not be counted is misplaced. The rule does not mean that any convictions that are over 10 years old or for which Petitioner was discharged more than 10 years prior to the instant offense are not scorable.

Rather, for a prior conviction to not be scorable, there must be a gap of at least 10 years between when Petitioner discharged a sentence and the next crime he committed.

As Respondent notes, the MDOC's Offender Tracking Information System (OTIS) website clearly indicates that Petitioner has not had a 10-year gap between any of his prior convictions. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=193734 (last visited Oct. 10, 2023). Thus, because the 10-year gap rule was not implicated, all of Petitioner's prior convictions were properly scored for purposes of PRVs 1, 2, and 5. Petitioner was not prejudiced by counsel's failure to argue otherwise because such an argument would have been meritless. *See Mahdi*, 522 F.3d at 638.

Next, Petitioner faults counsel for not objecting to the scoring of OV 3, which scores whether physical injury to a victim occurred. *See* Mich. Comp. Laws § 777.33(1). Petitioner was scored 5 points for "[b]odily injury not requiring medical treatment [that] occurred to a victim." *Id.* § 777.33(1)(e). Petitioner does not dispute that Mr. Skibbe suffered injury when Mr. Correa Harro "jumped into his boss's truck and rammed [Petitioner], who was sitting still in his truck, causing his truck to skid sideways into Mr. Skibbe, causing the injury." (ECF No. 1, PageID.144.) Petitioner, however, argues that it was not his actions, but those of Mr. Correa Harro, that caused the injury. (*Id.*) Petitioner provides no support for his suggestion that OV 3 can only be scored if the defendant's direct act causes the physical injury, and the Court has not located any case law suggesting such. Petitioner simply ignores the fact that it was his actions—specifically, his attempt at driving away—that set into motion the events noted above. Petitioner, therefore, was properly scored 5 points for OV 3, and any suggestion by counsel otherwise would have been meritless. *See Mahdi*, 522 F.3d at 638.

45

Petitioner also faults counsel for "fail[ing] to argue [the scoring of OV 9] properly." (ECF No. 2, PageID.145.) OV 9 refers to the number of victims, and Petitioner was scored 10 points for "2 to 9 victims placed in danger of physical injury," or "4 to 19 victims who were placed in danger of property loss." (Sentencing Tr., ECF No. 9-5, PageID.953.); *see also* Mich. Comp. Laws § 777.39(1)(c). Counsel argued that "the actions of Junior—Gilberto Junior kind of put all that in motion, in that, I think—we would just argue for the record that he was the only one placed in danger of physical injury." (Sentencing Tr., ECF No. 9-5, PageID.953.) The prosecution countered that argument, stating that the evidence at trial showed that three individuals in the house were "placed in the potential for injury." (*Id.*) Moreover, Mr. Skibbe was injured, and "Angilberto Junior as he was driving away from the—from the house." (*Id.*, PageID.954.) The Court agreed that it was "well above two victims," particularly because Petitioner acknowledged that he had "absolutely no memory of what he was doing that night." (*Id.*)

Petitioner suggests that counsel should have argued further that Petitioner did not place anyone in danger of injury because he did not possess or use any weapon, and because "'mere presence' does not constitute danger." (ECF No. 2, PageID.145.) As an initial matter, nothing in the statute suggests that OV 9 can only be scored when a weapon is used during the offense. Moreover, "[a] person does not need to actually be injured to be placed in danger of physical injury." *See People v. Watson*, No. 339745, 2019 WL 637286, at *2 (Mich. Ct. App. Feb. 14, 2019); *see also People v. Morson*, 685 N.W.2d 203, 210 (Mich. 2004) (emphasizing that a person may be a victim under OV 9 even if that individual is not a victim of the sentencing offense). Notably, the Michigan Court of Appeals has held that "close proximity to a physically threatening situation may suffice to count the person as a victim" for OV 9. *See People v. Hunt*, No. 352385, 2021 WL 1327254, at *3 (Mich. Ct. App. Apr. 8, 2021) (quoting *People v. Gratsch*, 831 N.W.2d

462, 473 (Mich. Ct. App. 2013)). In *Hunt*, the court of appeals upheld the scoring of OV 9 premised upon the fact that "the residents were in the home during the inherently dangerous night-time home invasion" and, therefore, "were placed in danger of physical injury or death." *See Hunt*, 2021 WL 1327254, at *3. Given this case law, it would have been meritless for counsel to raise the additional arguments Petitioner believes he should have raised for purposes of OV 9. *See Mahdi*, 522 F.3d at 638.

Finally, Petitioner suggests that counsel should have argued that the use of "judge found facts" to enhance Petitioner's sentencing guidelines was unconstitutional. (Pet., ECF No. 1, PageID.13.) Petitioner cites the Supreme Court's *Alleyne* decision as support for his claim. In *Alleyne*, the Supreme Court held that "any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 103. Thus, "mandatory minimum sentences may only be increased on the basis of facts found by a jury or admitted by a criminal defendant." *Robinson v. Woods*, 901 F.3d 710, 712 (6th Cir. 2008).

In 2015, the Michigan Supreme Court concluded that Michigan's sentencing scheme ran afoul of the *Alleyne* decision. *See People v. Lockridge*, 870 N.W.2d 502, 509 (Mich. 2015). Specifically, the supreme court found that "the Sixth Amendment does not permit judicial fact-finding to score [offense variables] to increase the floor of the sentencing guidelines range." *Id.* Thus, the Michigan Supreme Court held that the Michigan sentencing guidelines were no longer mandatory. *Id.* at 519–21.

Here, Petitioner was sentenced on May 15, 2017, well after the Michigan Supreme Court decided *Lockridge*. Thus, "it may be presumed that the sentencing court used an advisory sentencing scheme rather than the mandatory scheme that was applied in *Robinson*." *Torres v. Rewerts*, No. 18-1935, 2018 WL 7317219, at *2 (6th Cir. Dec. 19, 2018). Moreover, after

*Lockridge*, "a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion." *Fitzgerald v. Trierweiler*, No. 1:17-cv-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017). In Petitioner's case, therefore, the trial court's sentence was an exercise of discretion, and any facts that the trial court "may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *See id.* For Petitioner's counsel to argue otherwise would have been meritless. *See Mahdi*, 522 F.3d at 638.

In sum, Petitioner has not demonstrated that the state court's rejection of his claims of ineffective assistance premised upon alleged sentencing errors is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground VII.

### 2.    Ineffective Assistance of Appellate Counsel

As his second ground for relief, Petitioner faults appellate counsel "for failing to investigate and bring up issues that had merit." (Pet., ECF No. 1, PageID.7.) Specifically, Petitioner faults appellate counsel for not raising claims such as: (1) the issues regarding the interpretation provided by Mr. Ugalde; (2) trial court errors that resulted in an unfair trial; (3) ineffective assistance of trial counsel; (4) prosecutorial misconduct; and (5) sentencing errors. (*Id.*) Essentially, Petitioner faults appellate counsel for not raising Grounds I, III, V, VI, and VII set forth above. (ECF No. 2, PageID.108.)

Petitioner raised this argument in his motion for relief from judgment, and the trial court rejected it, stating: "Given that there is no identifiable prosecutorial misconduct, ineffective assistance of trial counsel established, or reversible trial court error, the fact that [Petitioner's] appellate counsel did not raise these additional issues as part of the appeal does not rise to the level of ineffective assistance of appellate counsel." (ECF No. 9-7, PageID.1048.) As thoroughly

discussed *supra*, Petitioner's other grounds for relief lack merit. Accordingly, Petitioner's "appellate counsel's failure to raise [those] claim[s] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground II.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full

merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability and denying Petitioner's motions to compel a more definite statement, for an evidentiary hearing, and for discovery (ECF Nos. 14, 15, and 23).


Dated:   <u>October 18, 2023</u>                    <u>/s/ Paul L. Maloney</u>
                                                                    Paul L. Maloney
                                                                    United States District Judge